By this Court.
I. Payment by the mortgagor, under our statute, before the commencement of the suit on the mortgage, though after the time limited for payment, is a good defence. It was so determined in the Circuit Court of the United States, New Hampshire District, Nov. 1801, Inches v. Warner, Manuscript Report.
And there can be no question but that a debt secured by mortgage, and the evidence of the debt not a negotiable note, and not assigned so as to pass the property in equity, is attachable.
II. But can the debtor avail himself, in an action brought by his creditor, of a judgment against him as garnishee, not executed, or where the money has not yet been paid ?
It is clear that service on the trustee makes him liable to the plaintiff in foreign attachment for what he, the trustee, then owes the principal debtor. And actual payment to his creditor will not relieve him from that liability. Laws, ed. *76 1805, 143, 144. The principal debtor may discharge the trustee at any time after attachment of the debt, even after judgment and execution issued, by payment of the debt so attached and condemned.
The statute, p. 146, enacts that the goods, effects, or credits of the principal debtor, so taken as aforesaid, by process and judgment of law, out of the hands of the trustee, shall discharge him against the action or demand of his principal or creditor. Attachment before judgment is certainly a good defence for the trustee against his creditor’s action, as long as it remains in force and undischarged. It is a good temporary bar. (a) If the attachment be discharged at any time before judgment, for example by the principal debtor’s paying the debt, he is deprived of his bar ; but ought to be allowed to deduct his costs in the foreign attachment, and not to be charged with costs in the suit of his creditor. After judgment against the principal debtor in the foreign attachment, and against the trustee, he can make no defence : he is bound at all events to pay. The plaintiff in foreign attachment has become his creditor, his judgment creditor. (b) It is true the plaintiff may also resort to his debtor for satisfaction. If he [the principal defendant] does actually satisfy, though after judgment *77 against the trustee, then the trustee is deprived of his bar, and entitled only to bis costs. If the plaintiff in foreign attachment, after obtaining satisfaction of the principal debtor, attempt to enforce the execution against the trustee, he may be relieved by audita querela. From this view of the case it seems very clear that nothing can hinder the trustee from availing himself in evidence, or plea in bar, of a judgment against him, but that which does not exist in this case, namely, payment by the principal debtor. And if this should be allowed to be a perpetual bar, it imposes no hardship on the trustee ;[1] for he may prevent it by paying the debt. This construction seems warranted by the letter, as well as spirit, of the statute. The effects or credits of the principal debtor are “ taken ” by process and judgment of law.
It is conceived that what is laid dowu in 2 G. Bacon, 262, from Rolle’s Abridgment, is not inconsistent with what has been now laid down. If A. sues B. in London, and C. is indebted to B. in the same sum, and C. is condemned there to A. and judgment given against him; yet, if no execution be sued against C., A. may have execution against B., his principal debtor ; and B. may sue 0. for his debt, notwithstanding the unexecuted judgment. The meaning may be only that B. may sue C. for his debt where, from the usage of the court, the unexecuted judgment against C., the garnishee, cannot be enforced by execution against C.; and this is reasonable ; and the same thing would be determined under our act.[2] Perhaps, according to the usage of the courts in England, the plaintiff or creditor in foreign attachment is not allowed to have execution at the same time against two distinct persons for the same debt; he might have against either, but not against both. Probably this was the old doctrine. In modern times the usage is different, as in the case of *78 judgments and executions against the different parties to a promissory note or bill of exchange, (a)
Upon this opinion being intimated, the plaintiff became non-suit, at November Term, 1803, or June Term, 1804; it is believed at the latter.[1]

 2 G. Bacon, 261. Debt on bond, penalty £100, conditioned for the payment of £50 at a certain day. Plea : attached (by custom of London) before the day limited for payment, and paid after the day, on scire facias. This is a good bar of the action for the penalty (when the law was that payment could not be pleaded in bar at law, unless made at the day), because, the attachment being made before the day of payment, it became a debt to the creditor, and the obligee could take no advantage of a breach of the condition afterwards. Here the attachment was deemed equivalent to payment; and so it ought, as between the trustee and principal debtor, until it is removed. The liability of the trustee to pay under the foreign attachment exempted him from the forfeiture of his obligation. So here, from forfeiture of the mortgage.

 1 Salk. 280. Condemnation in foreign attachment may be given in evidence, if before suit commenced by the principal against the garnishee. The property is altered.
Pleadable in abatement. 5 Johns. 101.

 The context seems to require the substitution oí “ principal debtor ” for “ trustee.”

 If the judgment against the trustee in foreign attachment has, from lapse of time, or other cause, ceased to be enforceable, it furnishes no defence to- the suit of the principal defendant against the trustee. Flower v. Parker, 1823, 3 Mason, 247; Fuller v. Rice, 1855, 4 Gray, 343.

 After service on trustee in foreign'attachment, if sued by his creditor, he may plead this as a temporary bar; after judgment, as a perpetual bar-. In both cases the plea may be avoided by the plaintiff showing collusion between trustee and plaintiff in the foreign attachment; and in the latter, by showing payment of the debt, or such matter as shall render the judgment unexecutable.
In 1 Wins. Saund. 67, it is said the garnishee shall be quit against the principal debtor, Ms creditor, after execution sued out by the plaintiff in foreign attachment. If no execution be sued out, the plaintiff may go on with his suit against the principal debtor, and the latter may proceed against his debtor, the garnishee. Semble, that in such case the proceeding by foreign attachment is abandoned.
See 1 Com. Dig. Attachment, E. H. 425, 426.

 By the record it appears that there was a verdict for the defendants at November Term, 1808, and judgment upon it at the same Term. Present, Wingate, J., Livermore, J., Atkinson, J.
As the cause had been taken from a jury at the previous June Term, to settle the question of law, it is probable that the verdict at November Term was directed by the Court (upon views similar to the above).
The existence of an unsatisfied, but enforceable, judgment against a trustee in a process of foreign attachment will, according to the weight of American authority, prevent the principal defendant from obtaining an execution in an action subsequently prosecuted by him against the trustee to recover the same debt; the trustee is not to be exposed to two executions at the same time for one debt. But whether such judgment operates as a practical extinguishment of the trustee’s indebtedness to the principal • defendant, or merely furnishes ground for staying proqeedings or execution against the trustee, is a question upon which there is more difference of opinion. In Maine, Indiana, Florida, and the earlier decisions in Massachusetts, the unsatisfied judgment is regarded as a conclusive and final bar to an action against the trustee by the principal defendant. Matthews v. Houghton, 1834, 11 Me. (2 Fairf.), 377; McAllister v. Brooks, 1842, 22 Me. 80; Tenney, C. J., in Merrill v. Noble, 1858, 48 Me. 140, 146 (see, however, 4 Greenl. 435, 438; and 18 Me. 332, 335); Covert v. Nelson, 1846, 8 Blackf. (Ind.) 265; King v. Vance, 1874, 46 Ind. 246; Sessions v. Stevens, 1847, 1 Fla. 233; Perkins v. Parker, 1804, 1 Mass. 117; Hull v. Blake, 1816, 13 Mass. 153. In Stadler v. Parmlee, 1862, 14 Iowa, 175, 177, it is said that the legal effect of judgment against the trustee is to satisfy, to *79 the extent thereof, the indebtedness between the trustee and the principal debtor, and therefore the judgment entry in the trustee suit need not in terms express such satisfaction. In Illinois, the Court hold that the proper form of entering judgment in foreign attachment is in the name of the principal debtor as the plaintiff, and against his debtor, the trustee, as defendant. Towner v. George, 1870, 58 Ill. 168. Farmer v. Simpson, 1851, 6 Tex. 803, was a proceeding to enforce a vendor’s lien against a vendee who had been charged in foreign attachment as the vendor’s trustee. It was held, that the decree should provide that the proceeds of the land to be sold should bo first applied to the payment of the judgment in foreign attachment. In Westmoreland v. Miller, 1852, 8 Tex. 168, it was held, that a trustee against whom judgment has been rendered is entitled, when sued by the principal defendant, to have the trusteeing creditor made a party; the Court can then allow and give effect to the judgment, or perpetually enjoin its recovery against the trustee. In Spicer v. Spicer, 1851, 23 Vt. 678, judgment was entered in the suit of the principal defendant against the trustee; but execution was stayed until the plaintiff should cause the defendant to be “released and discharged from the trustee suit,” in which judgment had been rendered against the trustee. In Lowry v. Lumberman’s Bank, 1811, 2 Watts & S. 210, 214, and Irvine v. Lumberman’s Bank, 1841, 2 Watts & S. 190, 208, 209, it was held that the trustee cannot plead the unsatisfied judgment in bar to a suit by the principal defendant; but it was said that “ it would be competent for him to protect himself by a plea in abatement.” In Meriam v. Rundlett, 1833, 13 Tick. 511, 515, 516, Shaw, C. J., thought that an unsatisfied judgment in foreign attachment ought not to be pleadable in bar to an,action by the principal defendant; but that the judgment might be good ground for an abatement or stay of proceedings. See also Hardin, J., in Coburn v. Currens, 1866, 1 Bush (Ky.), 212, 217; Prescott v. Hull, 1820, 17 Johns. 284.
In Burnham v. Folsom, 1832, 5 N. H. 566 (overruled by Foster v. Dudley, 1855, 30 N. H. 463), there is a dictum of Richardson, C. J., to the effect that an unsatisfied judgment in foreign attachment against the trustee is not an extinguishment “ of the debt of the principal against the trustee.” Compare Gilchrist, C. J., in Wilson v. Hanson, 1850, 20 N. H. 375, 377, and Bell, J., in Paffer v. Graves, 1853, 26 N. H. 256, 258.
In Alabama and Georgia (see also, in Maryland, Brown v. Somerville, 1855, 8 Md. 444), it is unqualifiedly held that an unsatisfied judgment in foreign attachment is no defence to a. suit by the principal defendant against the trustee. Cook v. Field, 1841, 3 Ala. 53; Brannon v. Noble, 1850, 8 Ga. 549. In both States, the pendency of a foreign attachment is considered good ground for staying execution in a suit by the principal defendant against the tar-tee: Crawford v. Slade, 1846, 9 Ala. 887; Shealy v. Toole, 1876, 56 Ga. 210, 212; but it seems to be argued that, after judgment has been rendered in the foreign attachment, the trustee is no longer in need of protection from the Court against the principal defendant, *80 because he can then discharge himself from the principal defendant’s suit by paying the judgment in foreign attachment. See Okmond, J., in Crawford v. Clute, 1844, 7 Ala. 157, 159. This argument is discussed and pronounced unsatisfactory in the able opinion of Kellogg, J., in Spicer v. Spicer, ubi supra, 679, 680.
It is supposed that in England an unsatisfied judgment would not avail the trustee. But the English authorities on this question hardly seem applicable in this State. Foreign attachment exists there only in a few localities, in accordance with an ancient custom. It is allowable only in the case of absent defendants ; the ostensible primary purpose being to compel the appearance of the principal debtor. .It is looked upon with evident disfavor by the Courts, and defences founded on it must be brought strictly within the letter of the custom. In subsequent suits by the principal against the trustee, it is said that it is not enough for the latter to show that he has paid the judgment rendered in the foreign attachment; he must show that the payment was made after execution issued. Wetter v. Rucker, 1820, 1 Brod. & B. 491; Magrath v. Hardy, 1838, 4 Bing. N. C. 782. In this country it has been held unnecessary for the trustee to delay payment until it has been demanded by force of an execution. Mills v. Stewart, 1847, 12 Ala. 90; Scott v. Coleman, 1824, 5 Litt. (Ky.) 349. See also Troyer v. Schweizer, 1870, 15 Minn. 241; Drew v. Towle, 1853, 27 N. H. 412. (In Massachusetts, the English rule has been adopted by the legislature. See Burnap v. Campbell, 1856, 6 Gray, 241.)